# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELA DANNER,<br>                    Plaintiff,<br><br>        v.<br><br>NANCY BERRYHILL,[1]<br>**Acting Commissioner of Social Security**<br>**Administration,**<br>                    Defendant. | CIVIL ACTION<br><br><br><br>NO.  15-6607 |

**DuBois, J.**                                                                                                              June 20, 2017

## M E M O R A N D U M

### I.  INTRODUCTION

In this action, plaintiff Angela Danner seeks review of the final decision of defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA").  The denial was based on a decision by an Administrative Law Judge ("ALJ") that plaintiff was not disabled under the SSA.  By Order dated May 11, 2016, the Court referred the case to United States Magistrate Judge Elizabeth T. Hey for a Report and Recommendation ("R & R").  On February 15, 2016, Judge Hey issued an R & R recommending that plaintiff's Request for Review[2] be denied.  Presently before the Court are plaintiff's Objections to the R & R.  For the reasons that follow, the Court

---

[1] Nancy Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill is substituted for Carolyn W. Colvin as defendant in this suit.

[2] Plaintiff filed a Brief and Statement of Issues in Support of Request for Review but did not file an actual Motion or Request for Review.  Plaintiff's Brief states on the second page that "this matter is appropriately before the Court for review under 42 U.S.C. § 405(g)."  The Court thus construes the Brief as a Request for Review.

approves and adopts the R & R, overrules plaintiff's Objections, and denies plaintiff's Motion and Request for Review.

II.     BACKGROUND

The background of this case is set forth in detail in Magistrate Judge Hey's R & R and will be recited in this Memorandum only as necessary to address plaintiff's Objections. Plaintiff applied for DIB and SSI on February 19, 2013, for disability allegedly beginning on February 19, 2013.[3] Administrative R. ("R.") at 147-164. After her application was denied, plaintiff requested a hearing which was held on June 24, 2014. R. at 14. In a decision dated July 24, 2014, the ALJ concluded that plaintiff was not disabled under the SSA. *Id.* In so concluding, the ALJ found that (1) plaintiff suffered from seven severe impairments (fibromyalgia, obesity, affective disorder, anxiety related disorder, somatic disorder, and personality disorder), and four non-severe impairments (gastroesophageal reflux disease, bilateral carpal tunnel syndrome ("CTS"), urinary stress incontinence, and dyslipidemia), R. at 17-18; (2) plaintiff's impairments, either alone or in combination, did not meet or equal the severity of a listed impairment under the SSA, R. at 18; (3) plaintiff had the residual functional capacity ("RFC") "to perform light work" with additional restrictions, including, in relevant part, "the option to sit or stand at will; frequently balance, occasionally climb stairs or ramps, stoop, kneel, and crouch, but never climb ladders, ropes, or scaffolding or crawl; gross or fine manipulation and feeling with the bilateral upper extremities limited to frequently; . . . work is limited to simple, routine, repetitive work in a[ ] work environment free from fast-paced production, involving only simple work-related decisions, and with few, if any, work place changes; no interaction with the public as part of the work; occasional interaction with coworkers but no tandem tasks; and occasional supervision,"

---

[3] Plaintiff originally alleged that her disability began on September 1, 2008. R. at 145, 147. She amended the date to February 19, 2013, at the hearing on June 24, 2014. R. at 38, 202.

2

R. at 21; and (4) based on the limitations found by the ALJ and the testimony of a vocational expert, plaintiff was capable of performing jobs that existed in significant numbers in the national economy and was thus not disabled under the SSA, R. at 28-29.

The Appeals Council denied plaintiff's request for review on July 24, 2015, and the ALJ's determination was thus affirmed as the Commissioner's final decision. R. at 1. Plaintiff commenced this action seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) on December 14, 2015.

### III. APPLICABLE LAW

A district court evaluates *de novo* those portions of a magistrate judge's report and recommendation to which an objection is made and may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district court's review of the Commissioner's final decision is limited to determining whether the denial of benefits "is supported by substantial evidence on the record as a whole" and whether the correct legal standards were applied. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 359 (3d Cir. 2004). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Although substantial evidence is more than a mere scintilla, it need not rise to the level of a preponderance." *Id.* at 359-60 (quoting *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003)).

To establish a disability under the SSA, the claimant must demonstrate some "medically determinable basis for an impairment that prevents her from engaging in any substantial gainful activity" for the statutory period. *Diaz v. Comm'r of Soc. Sec.*, 577 F. 3d 500, 503 (3d Cir. 2009) (quotation marks and citations omitted); 42 U.S.C. § 423(d)(1)(A). A claimant bears the initial

3

burden of proving the existence of a disability. *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Disability claims are evaluated using a "five-step sequential evaluation" of whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can perform past relevant work based on her RFC; and (5) if not, can perform other work in view of her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520, 416.920; *see McCrea*, 370 F.3d at 360. In deciding a disability claim, "an ALJ must clearly set forth the reasons for his decision. Conclusory statements that a condition does not constitute a medical equivalent of a listed impairment are insufficient. The ALJ must provide a discussion of the evidence and an explanation of reasoning for his conclusion to sufficiently enable meaningful judicial review." *Diaz,* 577 F. 3d at 504 (quotation marks and citations omitted). However, the ALJ "need not employ particular magic words[,] . . . particular language[,] or adhere to a particular format in conducting [the] analysis." *Id.* (quotation marks omitted).

In evaluating medical opinion evidence, an ALJ must "consider the medical opinions in [a] case record together with the rest of the relevant evidence." 20 C.F.R. §§ 404.1527(b), 416.927(b). Generally, the opinion of a medical source who has evaluated the claimant is given more weight than a source who has not, and the medical opinion of a treating source[4] that "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the case record]" will be given "controlling weight." 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). "When a conflict in the evidence

---

[4] A "treating source" is a medical source that has provided the claimant with "medical treatment or evaluation and who has, or has had, an ongoing treatment relationship" with the claimant. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 2000) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993). When an ALJ does not give the opinion of a treating source controlling weight, the ALJ must weigh the opinion—considering, *inter alia*, the length and nature of the treating relationship, and the supportability and consistency of the opinion—and give reasons for the weight given to the opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Plummer*, 186 F.3d at 429 ("An ALJ may . . . afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." (citation omitted)).

**IV.     DISCUSSION**

Plaintiff filed six objections to the R & R. Plaintiff argues that Judge Hey erred in finding that the ALJ's decision was supported by substantial evidence because the ALJ (1) failed to properly evaluate the severity of plaintiff's bilateral CTS, (2) improperly found that plaintiff's impairments did not meet or equal the severity of a listed impairment, (3) improperly evaluated the effect of plaintiff's fibromyalgia, (4) erred in determining plaintiff's RFC, (5) improperly weighed the opinion of plaintiff's treating physician, Dr. Tamayi Bwititi, and (6) improperly evaluated plaintiff's credibility. The Court addresses each objection in turn.

        A.    Plaintiff's First Objection

Plaintiff first objects to Judge Hey's conclusion that the ALJ properly evaluated the severity of plaintiff's bilateral CTS in step two of the five-step evaluation. Plaintiff asserts two arguments with respect to this issue: (1) "the Magistrate Judge failed to consider that conservative treatment does not automatically indicate that Danner's CTS is not disabling," and (2) medical evidence in the record demonstrates that her CTS was severe because "EMG studies

5

confirmed Danner's CTS" and Dr. Bwititi opined that plaintiff "could only use her bilateral hands 25% or less during the workday" due to her CTS. Objections 1-2 (citing R. at 619, 627).

This Court agrees with Judge Hey's conclusion that the ALJ's determination that plaintiff's CTS was not severe was supported by substantial evidence. First, the Court rejects plaintiff's argument with respect to plaintiff's conservative treatment. While conservative treatment is not determinative of the severity of a claimant's symptoms, an ALJ may consider the treatment a claimant has received in evaluating the claimant's symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Sturgill v. Colvin*, Civ. Action No. 15-1195, 2016 WL 4440345, *10 (E.D. Pa. Aug. 23, 2016) ("It is permissible to consider conservative treatment as one reason for discounting Plaintiff's claims of severe pain."). In determining that plaintiff's CTS was not severe, the ALJ considered not only plaintiff's conservative treatment but also the lack of objective evidence supporting plaintiff's alleged severe limitations resulting from her CTS. As stated by Judge Hey, the ALJ found that plaintiff's CTS "required no more than the most conservative of care, in this instance bracing and over-the-counter medication, with no objective evidence of significant loss of gross or fine motor abilities." R & R 23 (citing R. at 23-24).

Relatedly, the Court rejects plaintiff's second argument that the medical evidence in the record demonstrates that plaintiff's CTS was severe. On this issue, Judge Hey stated that the EMG studies cited by plaintiff were referenced in a treatment note from Dr. Bwititi from November 2013, which stated that "in the past, [plaintiff] had EMG studies that confirmed carpal tunnel," but plaintiff "point[ed] to no record evidence of such studies, let alone any other evidence confirming this condition[,]" and Dr. Bwititi's note "could simply be relating what Plaintiff herself reported . . . ." R & R 23 (citing R. at 619). Judge Hey further stated that "the record does not contain objective evidence or testing from Dr. Bwititi corroborating this

6

diagnosis," and, even assuming a diagnosis of CTS, Dr. Bwititi's opinion regarding plaintiff's limitations from CTS was inconsistent with the opinion of examining physician, Dr. Phuoc Le, who examined plaintiff on behalf of the Pennsylvania Bureau of Disability Determination. *Id.* at 23-24 (citing R. at 476, 628). Specifically, Dr. Bwititi opined that plaintiff "could use her hands 25% or less during the workday for reaching and fine/gross manipulation." *Id.* at 23 (citing R. at 25, 627-28). However, Dr. Le opined that plaintiff had normal fine motor movements, had 100% hand grip bilaterally, and could perform handling, fingering, and feeling bilaterally on a frequent basis. *Id.* (citing R. at 462). Finally, Judge Hey noted that, despite the fact that the RFC limited "gross or fine manipulation and feeling with the bilateral upper extremities" to "frequently," *id.* at 21, two of the jobs identified by the vocational expert involved no more than occasional gross or fine manipulation, *id.* at 24 (citing R. at 54). Thus, "the ALJ properly considered the limitations imposed by Plaintiff's CTS, even though he did not find it to be severe." *Id.*

Having reviewed the record, the Court agrees with Judge Hey's analysis on this issue. In addition, as discussed further below, the ALJ adequately explained his decision to give Dr. Bwititi's opinion little weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Plummer*, 186 F.3d at 429. The ALJ stated that "it appears Dr. Bwititi relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported," on the grounds that plaintiff failed to provide any records from Dr. Bwititi after November 2013, the "available records do not support the extreme degree of limitation noted," and plaintiff's subjective complaints of her symptoms were not reliable. R. at 25 (citing R. at 279-400, 452-58, 490-513, 599-624).

For the foregoing reasons, the Court overrules plaintiff's first objection.

7

B. Plaintiff's Second Objection

Plaintiff next objects to Judge Hey's conclusion that substantial evidence supported the ALJ's determination that plaintiff's impairments did not meet or equal a listed impairment. Plaintiff contends that substantial evidence supports finding that she has marked impairments in social functioning and in concentration, persistence, and pace. Objections 2-3.

1. *Social Functioning*

Plaintiff first argues that that her testimony at the hearing demonstrates that she had marked impairment in maintaining social functioning, *id.* (citing R. at 40, 46, 47, 49). On this issue, the ALJ determined that plaintiff had a moderate limitation in social functioning. R. at 20. Specifically, the ALJ stated that "[a]lthough the claimant alleges near complete social isolation and difficulty getting along with authority figures, friends, family members, and neighbors, she is admittedly able to live and interact with her children without reported difficulty; socializes with her immediate family; and has sustained a romantic relationship throughout the period at issue, all of which suggest at least some degree of retained functionality in this domain." R. at 19 (citing R. at 215-28, 253-56).

Judge Hey concluded that the ALJ's determination was supported by substantial evidence, including medical opinion evidence. R & R 27-28. Dr. Thomas Schwarz, a consulting psychologist who examined plaintiff in May 2013 on behalf of the Social Security Administration, opined that plaintiff had moderate limitation "in interacting appropriately with the public, supervisors, and co-workers," and that plaintiff had marked limitation "in responding appropriately to usual work situations and to changes in work setting." R & R 27 (citing R. at 482). Dr. Sandra Banks, the psychological consultant who reviewed plaintiff's records in June 2013 for the Disability Determination Explanation, opined that plaintiff was "not significantly

8

limited" in her "ability to maintain socially appropriate behavior[,] adhere to the basic standards to neatness and cleanliness[,]" and "ask simple questions or request assistance," and was moderately limited in her ability to "interact appropriately with the general public," "accept instructions and respond appropriately to criticism from supervisors," and "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." R. at 66; *see also* R & R 27.

With respect to these opinions, Judge Hey noted that the ALJ acknowledged the general hierarchy of medical opinion evidence but nonetheless gave "Dr. Banks' opinions significant weight because they were supported by other evidence in the record." R & R 28 (citing R. at 20, 39-40, 205-06, 218-19, 223). Additionally, both the ALJ and Judge Hey stated that plaintiff failed to "produce therapy treatment, or psychiatric treatment notes which could support a finding of greater limitation in the area of social functioning." *Id.*

The Court rejects plaintiff's argument that plaintiff's testimony demonstrates marked limitation in social functioning. First, the ALJ considered plaintiff's subjective reports of her symptoms during the relevant time period, but determined that they were not fully credible because they were inconsistent and were not supported by the other evidence in the record. R. at 19 (citing 215-28), 20 (citing 441-58, 480-513, 599-624, 630-36), 24; *see Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (a claimant's "subjective complaints must be substantiated by medical evidence").

Second, the Court agrees with Judge Hey that the ALJ's determination that plaintiff was moderately limited in social functioning was supported by substantial evidence. The Court notes that, while the R & R does not specifically discuss the discrepancy between Dr. Schwartz's finding of one marked social limitation—responding appropriately to usual work situations and

9

to changes in work setting—and Dr. Banks' finding of moderate limitation in the same area, the ALJ explained that he gave Dr. Schwartz's opinion "little weight" to the extent that it "overestimates the severity of [plaintiff's] impairments," and was inconsistent with the assessment of plaintiff's treating mental health providers and with evidence "suggest[ing] a more stable and controlled mental health presentation." R. at 26 (citing R. at 441-51, 481-89, 630-36); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Plummer*, 186 F.3d at 429.

2.      *Concentration, Persistence, and Pace*

Plaintiff next argues that her marked limitations in concentration, persistence, and pace are supported by the opinions of Dr. Schwartz and Dr. Bwititi. Objections 3 (citing R. at 481-83, 626-28). Specifically, plaintiff notes that Dr. Schwartz opined that plaintiff had moderate to marked difficulty[5] "carrying out simple instructions and making judgment on complex work-related decisions" and marked difficulty "carrying out complex instructions and responding appropriately to usual work situations and to changes in a routine work setting," *id.* (citing R. at 481), and that Dr. Bwititi opined that plaintiff "frequently experience[d] pain or other symptoms enough to interfere with attention and concentration needed to perform [even] simple tasks," *id.* (citing R. at 626).

Judge Hey rejected this argument in the R & R and determined that plaintiff did not establish that she had marked limitations in concentration, persistence, and pace. R & R 28. Judge Hey considered the opinion of Dr. Schwarz and the opinion of Dr. Banks and concluded that, taken together, these opinions did not support a finding of marked limitations in concentration, persistence, and pace. R & R 28 (citing R. at 481). Specifically, Judge Hey noted

---

[5] With respect to carrying out simple instructions and "the ability to make judgments on complex work-related decisions," Dr. Schwartz checked both the "moderate" and "marked" boxes, and drew an arrow between the two. R. at 481. He further noted "depending on task and current sx [symptoms]," next to the boxes for carrying out simple instructions. *Id.*

10

that, in addition to moderate-to-marked and marked limitations, Dr. Schwarz found plaintiff only mildly limited in her ability to understand and remember simple instructions and make judgments on simple work-related decisions. R & R 28 (citing R. at 481). Further, Judge Hey noted that Dr. Banks opined that plaintiff was "not significantly limited in her ability to carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain ordinary routine without special supervision, work in coordination with [or in proximity to] others, and make simple work-related decisions" and was "moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, . . . complete a normal workday and workweek without interruptions from psychologically based symptoms, and . . . perform at a consistent pace without [unreasonable] rest periods." R & R 28-29 (citing R. at 65). Finally, Judge Hey concluded that the ALJ's determination of moderate limitation was also consistent with plaintiff's treatment notes from February 2013 through August 2014, which did not show marked or significant impairments with respect to social functioning. R & R 29 (citing R. at 448, 633-36).

Having reviewed the record, this Court rejects plaintiff's argument that the opinions of Dr. Schwartz and Dr. Bwititi support a determination that plaintiff had marked limitations in concentration, persistence, and pace. This Court agrees with Judge Hey that, considered together and with the other evidence in the record, the opinions of Dr. Schwarz and Dr. Banks support the ALJ's determination that plaintiff had moderate limitations in concentration, persistence, and pace. To the extent that Dr. Schwarz opines that plaintiff has marked limitations in this area, this Court concludes that, as discussed above, the ALJ adequately explained the limited weight he gave such evidence. R. at 26.

For similar reasons, the Court rejects plaintiff's argument that Dr. Bwititi's opinion demonstrates that plaintiff has marked limitations in this area. As discussed elsewhere in this Memorandum, the ALJ sufficiently explained his reasons for affording Dr. Bwititi's opinion little weight, including its inconsistency with the other evidence of record and lack of evidence supporting his opinion. R. at 25.

For all of the foregoing reasons, the Court overrules plaintiff's second objection.

    C.    <u>Plaintiff's Third Objection</u>

Plaintiff objects to Judge Hey's conclusion that the ALJ's determination with respect to the severity of plaintiff's fibromyalgia was supported by substantial evidence. Plaintiff contends that the ALJ failed to properly evaluate the severity of plaintiff's fibromyalgia and that "the ALJ's discussion of Danner's fibromyalgia is not consistent with her treatment notes." Objections 3-4 (citing R. at 48, 217, 222, 472, 501, 502, 506, 507, 509, 577, 625-29).

The Court rejects these arguments. With respect to plaintiff's fibromyalgia, the ALJ stated that he "'considered fibromyalgia and the effects of fibromyalgia'" and determined that the medical evidence did not support plaintiff's allegations regarding the severity of her symptoms. R & R 30 (citing R. at 18, 21-22). Judge Hey concluded that this determination was consistence with the medical evidence, including: (1) on April 30, 2013, Dr. Le found that plaintiff had normal "fine motor movements in the hands," that her "elbows, wrists, fingers, hips, knees and ankles appear[ed] normal" and she had no muscle atrophy, that plaintiff was "able to walk and move independently, . . . rise from a chair[,] and get on and off the examination table with minimal effort," and had only "mild tenderness in the cervical and lumbar spine regions and . . . upper extremities;" and Dr. Le opined that plaintiff could sit for seven hours, stand for six hours, and/or walk for six hours during an eight-hour work day, R & R 31 (citing R. at 461, 476);

12

(2) after starting physical therapy for fibromyalgia in May 2013, plaintiff asked to be discharged in July 2013 "due to multiple complications in her life," *id.* (citing R. at 500-09, 566); and (3) plaintiff was found to have a normal range of motion during subsequent medical visits on September 26, 2013, November 22, 2013, and April 18, 2014, *id.* (citing R. at 602, 620, 561). Further, Judge Hey stated that "the ALJ took Plaintiff's fibromyalgia symptoms and physical limitations into account in his hypothetical" to the vocational expert. *Id.* at 32.

Having reviewed the record, the Court agrees with Judge Hey's analysis of this issue. The parts of the record cited by plaintiff in support of her objection do not alter this analysis.[6] First, to the extent that those portions of the record document plaintiff's diagnosis and reported symptoms, the ALJ found plaintiff's fibromyalgia to be a severe impairment and that plaintiff's "complaints of chronic pain, attributed to Fibromyalgia, are long-standing, documented well prior to the alleged onset date and continuing through the most recent medical evidence." R. at 16, 18. However, as discussed by Judge Hey, the ALJ determined that the objective medical evidence did not support plaintiff's subjective reports, and instead suggested "a stable and controlled disorder rather than listing-level severity." R. at 18. The Court agrees that this determination is supported by substantial evidence, including Dr. Le's examination from April 2013, which records less severe reported symptoms and physical limitations than plaintiff's physical therapy records from the same time, and plaintiff's subsequent records from Dr. Bwititi's practice which record no limitations on range of motion. Further, as discussed above, the ALJ adequately explained the weight he afforded Dr. Bwititi's opinion. R. at 25.

For the foregoing reasons, the Court overrules plaintiff's third objection.

---

[6] R. at 48, 217 (plaintiff's self-report of the severity of her fibromyalgia symptoms), 472 (plaintiff's description of her symptoms as considered by Dr. Le), 501-02, 506-09, 577 (plaintiff's treatment records from her physical therapy appointments in April and May of 2013), 625-29 (Dr. Bwititi's opinion with respect to plaintiff's limitations).

13

D. Plaintiff's Fourth Objection

Plaintiff objects to Judge Hey's conclusion that the ALJ's RFC determination was supported by substantial evidence. On this issue, plaintiff argues that the Judge Hey did not (1) address the ALJ's failure to properly consider plaintiff's severe mental impairments, (2) "respond to Plaintiff's argument regarding the impact of bilateral carpal tunnel syndrome," and (3) "explain how Danner would be able to perform light work when she is only able to stand/walk for approximately two (2) hours out of an 8-hour working day. Objections 5.

With respect to plaintiff's mental health and her RFC, the ALJ stated the following:

> [T]he available medical evidence of record does not suggest functional limitations in excess of those [listed in the RFC]. The record documents chronic mental health disorders, present well-prior to the amended alleged onset date and controlled in the months leading up to that date with only conservative care, given the notably moderate Global Assessment of Functioning scores of record and stable medications and intensity of care. Despite her subjective complaints of varied and quite significant symptoms during the period at issue, the objective records suggests ongoing stability, with largely unchanging medications and intensity of treatment, as well as overall normal mental status examination findings, suggestive of no more that mild to moderate functional loss and quite inconsistent with the claimant's allegations of totally debilitating disorders.

R. at 23. The ALJ also noted the absence of hospitalization, intensive outpatient treatment, or increase in mental health treatment during the relevant time period. *Id.*

In the R & R, Judge Hey concluded that the ALJ "thoroughly discussed Plaintiff's mental and physical impairments" and stated that while plaintiff received treatment for depressive and anxiety disorders, plaintiff has "not pointed to any treatment records that establish any specific functional limitations" stemming from these impairments. R & R 34. Further, Judge Hey concluded that the ALJ had properly discussed and weighed the medical opinion evidence of Dr. Schwartz and Dr. Banks with respect to plaintiff's mental impairments. *Id.* This Court agrees with Judge Hey's conclusion, and rejects plaintiff's first argument.

14

The Court also rejects plaintiff's contention that Judge Hey failed to address plaintiff's argument that the ALJ did not consider plaintiff's CTS in determining the RFC. While Judge Hey did not address this argument in this portion of the R & R, as discussed with respect to plaintiff's first objection, Judge Hey concluded that the ALJ had properly considered plaintiff's CTS and that, regardless, plaintiff's CTS was accounted for in the two jobs identified by the vocational expert that required only occasional gross and/or fine manipulation. R & R 24 (citing R. at 54).

With respect to plaintiff's third argument, Judge Hey first noted that plaintiff relied on the opinion of Dr. Bwititi pertaining to plaintiff's ability to stand and walk during the workday, and concluded as follows:

> Plaintiff's argument fails because the ALJ never found Plaintiff to be capable of a "full or wide" range of light work, but rather, restricted her to a limited range of light work and, alternatively, to sedentary work. Additionally, the ALJ's RFC assessment requires that Plaintiff be able to set or stand at will, which is consistent with Dr. Le's opinion that Plaintiff is able to stand for six hours and walk for six hours in an eight-hour workday.

R & R 35 (citing R. at 29-30, 461). The Court agrees with Judge Hey's analysis of this issue, noting also that the ALJ adequately explained the weight he gave Dr. Bwititi's opinion. R. at 25.

For all of the foregoing reasons, the Court overrules plaintiff's fourth objection.

### E. Plaintiff's Fifth Objection

Plaintiff objects to Judge Hey's conclusion that the ALJ properly weighed the opinion of plaintiff's treating physician, Dr. Bwititi. Objections 6. She argues that Judge Hey failed to consider that Dr. Bwititi's opinion was corroborated by Dr. Schwarz's opinion and that "if the ALJ had any doubt as to the basis of Dr. [Bwititi's] opinion, he should have contacted Dr. [Bwititi] regarding a clarification as to Danner's RFC limitations." *Id.* (citing R. at 481-83; *Colavito v. Apfel*, 75 F. Supp. 2d 385, 389 (E.D. Pa. 1999).

15

As stated above, the ALJ gave Dr. Bwititi's opinion little weight on the grounds that the report appeared to rely "heavily" on plaintiff's subjective reports, plaintiff provided no treatment records from Dr. Bwititi's practice after November 2013, the "available records d[id] not support the extreme degree of limitation noted," and that plaintiff's subjective complaints of her symptoms were not reliable. R. at 25 (citing R. at 279-400, 452-58, 490-513, 599-624). Judge Hey concluded that the ALJ properly weighed the medical opinion evidence in this case. R & R 39. In so concluding, Judge Hey stated that the record contains no treatment records from Dr. Bwititi after November 2013, "and therefore the doctor's opinion rendered on June 9, 2014, is not substantiated by any recent treatment records," and Dr. Bwititi's opinion that plaintiff's impairments would "frequently interfere with her work is inconsistent with Plaintiff's conservative treatment and reported activities, and is inconsistent with Dr. Banks' evaluation of plaintiff's abilities, which the ALJ found to be consistent with the record as a whole. R & R 39 (citing R. at 25-26).

This Court agrees with Judge Hey's conclusion that the ALJ's decision to give Dr. Bwititi's opinion little weight was supported by substantial evidence and rejects plaintiff's arguments on this issue. First, with respect to the corroboration from Dr. Schwarz's opinion, the ALJ gave Dr. Schwarz's opinion that plaintiff had marked limitations little weight because it was inconsistent with the assessment of plaintiff's treating mental health providers and with the evidence in the record that showed "a more stable and controlled mental health presentation." R. at 26 (citing R. at 441-51, 481-89, 630-36); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Plummer*, 186 F.3d at 429. Second, while the ALJ should, "where the evidence is insufficient, . . . attempt to secure additional evidence to determine whether a claimant is disabled," *Colavito,* 75 F. Supp. 2d at 389, the ALJ determined Dr. Bwititi's opinion to be

16

"inconsistent" with and "unsupported" by the evidence in the record and determined, based on the other evidence in the record, that plaintiff was not disabled. R. at 25, 29. Thus, the ALJ did not err by not attempting to obtain further evidence. *See* 20 C.F.R. §§ 419.420(b), 404.1520(b) (discussing and defining "insufficient" and "inconsistent" evidence).

For these reasons, the Court overrules plaintiff's fifth objection.

F. Plaintiff's Sixth Objection

Plaintiff's sixth and final objection is that Judge Hey erred in concluding that the ALJ's determination regarding plaintiff's credibility is supported by substantial evidence. Objections 7. Plaintiff argues that Judge Hey improperly relied on plaintiff's conservative treatment as evidence that plaintiff's limitations were not severe on the grounds that conservative treatment "does not automatically indicate that Danner's impairments are not disabling." *Id.* (citing *Shaw v. Apfel*, 221 F.3d 126, 134-35 (2d Cir. 2000)). Plaintiff also argues that Judge Hey improperly "refer[red] to Danner's daily activities to undermine her credibility" on the grounds that plaintiff's ability to complete "limited daily activities . . . are not [in] any way inconsistent with Danner's assertion that she cannot perform sustained work activities . . . ." *Id.* at 7-8 (citing *Rieder v. Apfel*, 115 F. Supp. 2d 496, 504-05 (M.D. Pa. 2000)).

On this issue, the ALJ stated that he found plaintiff's reports with respect to the severity of her symptoms not credible because plaintiff described daily activities that are "fairly limited," but (1) her reports of the degree of limitation in her daily activities could not "objectively verified with any reasonable degree of certainty" as the medical evidence in the record did not support the limitations alleged and plaintiff did not produce sufficient evidence "such as complete mental health treatment records," to corroborate her self-reports, (2) even if her activities were as limited as alleged, "it [would be] difficult to attribute that degree of limitation

17

to [her] medical conditions, as opposed to other reasons, in view of the relatively weak medical evidence," and (3) plaintiff's admitted daily activities were inconsistent with her alleged restrictions, "in that she has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." R. at 24.

In concluding that the ALJ's determination with respect to plaintiff's credibility was supported by substantial evidence, Judge Hey stated that plaintiff's "conservative treatment for her physical and mental impairments, together with her self-described activities, do not support Plaintiff's complaints of complete disability." R & R 43. Continuing, Judge Hey noted that (1) plaintiff's treatment for her physical impairments was routine and conservative, "with medication management and a very brief course of physical therapy," (2) "the record contains limited [mental health] therapy notes, no inpatient hospital psychiatric hospitalization or intensive outpatient treatment during the relevant period, a consistent medication and therapy regimen, and largely normal mental status examinations," and (3) plaintiff admitted that she was "able to parent her school-age children, attend to her personal care, prepare simple meals, complete light household chores, shop and interact with her family without difficulty, manage her financial affairs, and sustain a romantic relationship, all of which supports a conclusion that her impairments are not work-preclusive." R & R 43-44 (citing R. at 24, 39-49, 205-06, 218-19, 223). Further, Judge Hey determined that, despite finding plaintiff's testimony not entirely credible, the ALJ "credited plaintiff's testimony to the extent it was consistent with the record" and included the following restrictions in the RFC: "light and sedentary work with a sit/stand option at will, . . . no more than simple, routine, repetitive work involving only simple work-related decisions with no public contact and no more than occasional contact with coworkers and supervisors . . . ." R & R 44 (citing R. at 21).

The Court rejects plaintiff's arguments on this issue. First, as discussed above, the treatment a claimant has received may be considered in evaluating the claimant's symptoms, and the ALJ considered not only the treatment plaintiff received but also the lack of medical evidence supporting plaintiff's allegations and the inconsistent reports of her daily activities. R. at 24; *see Sturgill*, 2016 WL 4440345, at *10. Second, while the ability to perform household tasks and engage in recreational activities does not mean that a claimant is able to work, *see Rieder*, 115 F. Supp. 2d at 504, the ALJ did not rely solely on plaintiff's alleged daily activities to determine that she was capable of working. Rather, the ALJ considered the lack of evidence that supported plaintiff's alleged restrictions and that her reports of her daily activities were inconsistent with the severity of her alleged symptoms to determine that "the information provided by the claimant generally may not be entirely reliable." R. at 24; *see* 20 C.F.R. §§ 404.1529(a), 416.929(a) ("[S]tatements about [a claimant's] pain or other symptom will not alone establish that [the claimant is] disabled."); *see also Williams*, 970 F.2d at 1186.

For these reasons, the Court overrules plaintiff's sixth objection.

V. **CONCLUSION**

For the foregoing reasons, the R & R is approved and adopted, plaintiff's Objections are overruled, plaintiff's Request for Review is denied, and judgment is entered in favor of defendant, Nancy Berryhill, Acting Commissioner of Social Security Administration, and against plaintiff, Angela Danner. An appropriate order follows.